No. 23,524.

MARTHA MAIN, *Appellee,* v. ANNIE YANDELL et al. (AVALENA C. ACHESON et al., *Appellants,* JOHN CASSON, *Appellee.*)

OPINION DENYING A REHEARING.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion denying a rehearing filed June 10, 1922. (For original opinion of affirmance see 110 Kan. 630, 204 Pac. 540.)

*W. R. Hazen,* and *Otis Allen,* both of Topeka, for the appellants.

*W. E. Atchison,* and *Otis E. Hungate,* both of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: In the defendants' briefs and in the two motions for rehearing it has been insisted that the testimony failed to show that Joseph Casson was of unsound mind at the time the will was signed. In the second motion therefor, filed April 10, a résumé is given of the testimony, and it is said there were eighteen witnesses who knew Joseph Casson until his death, or nearly so, whose evidence of his sound mind was positive, and based upon close, intimate and continuous acquaintance, "as against a group of witnesses whose adverse opinions were formed from casual, remote and intermittent acquaintance and observation, too stale to be entitled to consideration at all."

The opinion recited certain portions of the evidence showing Mr. Casson's eccentricities and peculiar conduct, reference being made to the testimony of Doctor McDonald, and also the affidavit of James Acheson made on the motion in support of a new trial touching Mr. Casson's appearance at his house after the will was made. It was said in the opinion to be the settled rule that the trial court's finding of fact is conclusive unless unsupported by the evi-

dence. Not only did the jury find mental incapacity, but the court
made a similar finding of its own. While the record presented is
one from which different triers of fact might, and doubtless would,
have reached ·different conclusions, the majority of the court feel
that there was sufficient to sustain the finding of mental incapacity.

Aside from the unquestioned peculiarities manifested by Mr.
Casson from which numerous witnesses concluded he was of un-
sound mind, we have the testimony of Doctor McDonald, who,
from personal observation was unconvinced of such unsoundness,
but answered that certain proved conduct indicated insanity. In
order that the decision in this case may not be deemed a departure
from the settled rule, the somewhat unpleasant duty is undertaken
to refer more in detail to the testimony of H. W. Page, partner of
the attorney who drew the will and who was in the office in an ad-
joining room at the time it was signed. Attention is called to the
following:

"Mr. Casson was very feeble. I think he was in the neighborhood of ninety
years of age. I doubt whether he could walk alone that day. The day was
not cold but Mr. Casson had on an overcoat and a long red scarf around·his
neck and wore a cap."

The three went into Mr. Hazen's private office. There was a
partition between the two offices, which was boarded up about
three feet and glass above that, and his desk and W. R. Hazen's
sat against the partition on opposite sides, and there was a door
about the center of the partition wall.

"When Joseph Casson came in, they went into Mr. Hazen's office and the
conversation that was carried on in there was between Mr. Acheson and
Mr. Hazen. I didn't hear Mr. Casson say a word. . . .

"Q. Did you hear Acheson say what should go into the will? A. I did.
Mr. Acheson was in a few days before that talking over the making of the
will and Mr. Hazen told him he would have to bring Casson in; that was
a few days prior to the time Casson came. . . .

"Q. Did you hear Joseph Casson say to Judge Hazen anything about the
making of the will? A. No, sir; he said nothing. . . .

"Q. Now after the will was dictated by Judge Hazen and prepared, what
was done with the will then? A. Mr. Hazen read it over in his office. . . .

"Q. He then had the will in his office where Mr. and Mrs. Acheson and
Joseph Casson all were? A. Yes, sir.

"Q. And the will was read over there? A. Yes, sir.

"Q. Was anything said between Judge Hazen and Mr. Casson in relation
to the will? A. Mr. Hazen said to Casson, he said, 'Joe, is that the way

you want it?' Mr. Casson was then where I could see him. Our door was partly open. The telephone rang and I was in the act of answering the phone, when Mr. Hazen asked Mr. Casson that. Mr. Casson made no reply. Mr. Casson was crying, tears running down his face.

"Q. Did he make any answer to this question? A. No, sir.. Mr. Hazen asked him in a loud voice, 'Joe, is this the way you want the will?' and without appearing to understand, he said: 'If that's the way these folks want it, I guess it's all right.'

"Q. Did Judge Hazen say to you in this conversation which took place after the parties left in substance: 'That was a job I don't like.' A. I wouldn't say he said that in those words. In substance.

"Q. I will ask you if he said to you in substance that 'old Joe is not going to last long'? A. He did in substance; might not have been just those words. I remember him saying he had failed very much since he last saw him.

"Q. Did he, W. R. Hazen, say, 'They are going rather strong to get all of old Joe's property'? A. I don't know as he said 'rather strong.'

"Q. State what he did say. A. It was in substance that he thought the Achesons had taken advantage of the old man. . . .

"Q. What did you say to the stenographer about it? A. We had a conversation about the Achesons; how they had brought this old man in there and gotten all of his property. We knew of the fact that he had given them the farm before, and how they had given it to the children instead of taking it themselves, and we thought it strange, and the condition of the old man, appearing not to know where he was that day."

While Mr. Page was not asked his opinion as to the mental capacity of the testator, the foregoing is sufficient to show what it was, and being familiar with him and his circumstances and surroundings, and having seen him and noted his appearance and heard his answer to the questions on this occasion, his testimony is quite significant.

While the question of undue influence was for some reason taken out of the case, it is held that the findings made by the jury and also by the trial court of mental incapacity at the time the will was made were and are sufficiently supported and sustained.

The former opinion is therefore adhered to.

BURCH, J., dissents.